WO

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

Michael R. Ward,

Plaintiff,

v.

Nathaniel Harris, et al.,

Defendants.

No.  CV 18-00694-PHX-JAT (DMF)

**ORDER**

    Plaintiff Michael R. Ward, who is currently confined in the Arizona State Prison Complex(ASPC)-Eyman, brought this civil rights action pursuant to 42 U.S.C. § 1983. Defendants Correctional Officer (CO) Harris, Dr. Graham, and Corizon Healthcare (Corizon) move for summary judgment.  (Docs. 72, 74.)  Plaintiff was informed of his rights and obligations to respond pursuant to *Rand v. Rowland*, 154 F.3d 952, 962 (9th Cir. 1998) (en banc) (Docs.76,  77), and he opposes the Motions.  (Docs. 83, 95.)

## I.    Background

    On screening Plaintiff's First Amended Complaint (Doc. 38) under 28 U.S.C. § 1915A(a), the Court determined that Plaintiff stated Eighth Amendment claims based on deliberate indifference to serious medical needs against Defendants Harris (Count One), Graham (Count Two), and Corizon (Count Four).  (Doc. 35.)  The Court dismissed the remaining claims and Defendants.  (Docs. 7, 35.)

. . . .

. . . .

## II.    Legal Standard

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  The movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323.

If the movant fails to carry its initial burden of production, the nonmovant need not produce anything.  *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Co., Inc.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000).  But if the movant meets its initial responsibility, the burden shifts to the nonmovant to demonstrate the existence of a factual dispute and that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmovant.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 250 (1986); *see Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995).  The nonmovant need not establish a material issue of fact conclusively in its favor, *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968); however, it must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted); *see* Fed. R. Civ. P. 56(c)(1).

At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial.  *Anderson*, 477 U.S. at 249.  In its analysis, the court must believe the nonmovant's evidence and draw all inferences in the nonmovant's favor.  *Id.* at 255.  The court need consider only the cited materials, but it may consider any other materials in the record.  Fed. R. Civ. P. 56(c)(3).

## III.    Facts

Plaintiff was injured in an all-terrain vehicle accident at the age of 14, which caused Plaintiff to experience sensitivity to light.  (Doc 1 at 3.)  After entering the custody of the

Arizona Department of Corrections (ADC), while housed in minimum security, Plaintiff was issued a Special Needs Order (SNO) for sunglasses due to photosensitivity by NP King on or about April 3, 2015 with an approximate end date of April 3, 2016.  (Doc. 96-1 at 1.)  After Plaintiff was transferred to ASPC-Eyman, Special Management Unit (SMU) I, a maximum custody unit,[1] on February 20, 2016, Plaintiff was provided a SNO for sunglasses with a listed expiration date of January 1, 9999 by Registered Nurse Michael Baker.  (Doc. 75 ¶ 1, Doc. 73 ¶ 15, Doc. 75 at 8-9; Doc. 96-1 at 3.)

On August 13, 2016, Defendant CO Harris confiscated Plaintiff's sunglasses stating that Plaintiff's SNO for sunglasses had been revoked.  (Doc. 1 at 4; Doc. 73 ¶ 19.)  Harris does not recall seeing the print-out discontinuing Plaintiff's SNO for sunglasses, but his practice is to rely on such documents.  (Doc. 73 ¶ 21.)  Harris recalls that, at some point, Dr. Graham confirmed that Plaintiff's SNO for sunglasses was no longer valid.  (*Id.* ¶ 22.)  Dr. Graham does not remember whether he ever spoke to Harris about Plaintiff's SNO.  (Doc. 75 at 3 ¶ 12.)  Pursuant to the ADC's Department Order, DO 909, inmates in minimum, medium, and close custody are permitted to have sunglasses, but inmates in maximum security are not allowed to possess sunglasses except that an inmate is allowed to have items that are "clinically indicated for the inmate's medical condition(s)."  (Doc. 73-1 at 3 ¶ 7; Doc. 73-1 at 9.)[2]  Defendants assert that sunglasses pose a risk in maximum custody units because they obstruct officers from being able to see an inmate's eyes, and they can be made into weapons.  (*Id.* ¶ 8.).  (*Id.* ¶¶ 5-7.)

On August 14, 2016, when Plaintiff was provided outdoor recreation without sunglasses, he contracted a headache, became dizzy, and began to vomit due to the lack of protection for the photosensitivity in his eyes.  (Doc. 38 at 18.)  Plaintiff went to medical

---

[1] Inmates in maximum security are considered high risk and are housed in restrictive environments (Doc. 73-1 at 2.)

[2] Defendant Dr. Graham claims, without citation to any supporting documents, that "for an inmate to have a SNO for sunglasses the inmate must have a diagnosis for a medical or optical disease where sunglasses are necessary—such as retinitis pigmentosa, ocular albinism, a significant corneal scar, or other rare eye diseases." (Doc. 75 at 40.)

and saw Registered Nurse Nieblas, the Director of Nursing, who issued plaintiff a new SNO for sunglasses due to photosensitivity. (Doc. 75 ¶ 3.) On August 16, 2016, Defendant Graham revoked the new SNO for sunglasses issued by RN Nieblas, without examining Plaintiff, noting that:

> This reviews [sic] being created to rescind the SNO for sunglasses provided by ADON Nieblas. Unknown to ADON Nieblas, this inmate does not possess any of the diagnoses that qualify for sunglasses, particularly at SMU 1. The chronic diagnoses that qualify are retinitis pigmentosa and ocular albinism (and occasionally chronic iritis). For a short period of time, acute keratitis and acute iritis can qualify.
>
> I will go into the eOMIS and rescind the SNO for sunglasses.

(Doc .75 ¶ 4.)

In December 2016, Plaintiff was transferred out of maximum custody. (Doc. 96 at 10.) On December 18, 2016, Plaintiff was seen by an optometrist working at the ADC, Dr. Taddonio, D.O., who diagnosed Plaintiff with Hypermetropia and Presbyopia. (Doc. 96-1 at 11, 12.) Upon this evaluation and diagnosis, Dr. Taddonio ordered Plaintiff reading glasses and wrote that Plaintiff should be given a SNO for sunglasses. (Doc. 96-1 at 12.)

## IV.   Discussion

Under the Eighth Amendment, a prisoner must demonstrate that a defendant acted with "deliberate indifference to serious medical needs." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). There are two prongs to the deliberate-indifference analysis: an objective prong and a subjective prong. First, a prisoner must show a "serious medical need." *Jett*, 439 F.3d at 1096 (citations omitted). A "'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc) (internal citation omitted). Examples of a serious medical need include "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or

treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *McGuckin*, 974 F.2d at 1059-60.

Second, a prisoner must show that the defendant's response to that need was deliberately indifferent. *Jett*, 439 F.3d at 1096. An official acts with deliberate indifference if he "knows of and disregards an excessive risk to inmate health or safety; to satisfy the knowledge component, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Prison officials are deliberately indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical treatment," *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002) (internal citations and quotation marks omitted), or when they fail to respond to a prisoner's pain or possible medical need. *Jett*, 439 F.3d at 1096.

## A.    Defendant Graham

In his Motion for Summary Judgment, Defendant Graham argues that he was not deliberately indifferent to Plaintiff's serious medical needs because Plaintiff has not produced any evidence that Graham's decision to rescind the SNO was medically unacceptable under the circumstances or that he made the decision in conscious disregard to Plaintiff's health. Graham argues that he rescinded the SNO because Plaintiff "did not have a medically appropriate optical or medical diagnosis that showed the medical necessity for sunglasses." (Doc. 74 at 9.)

### 1.    Serious Medical Need

Plaintiff avers that he has suffered from photosensitivity since he was injured in an ATV accident when he was fourteen-years-old. Plaintiff's medical records indicate that he reported the photosensitivity to providers, and Plaintiff avers that he reported headache, dizziness, and vomiting when exposed to sun without sunglasses. Defendant Graham

admits that he never examined Plaintiff's eyes,[3] that he was a general medical provider and would not have examined Plaintiff's eyes, and that, in his opinion, Plaintiff did not qualify for sunglasses because he did not suffer from a list of illnesses that Graham had pre-determined warranted sunglasses. The evidence in the record shows that prior to Defendant Graham discontinuing Plaintiff's SNO, multiple nurses, including the Director of Nursing, thought sunglasses were medically necessary for Plaintiff's condition and issued him a SNO for sunglasses. Defendants have produced no evidence suggesting that those nurses gave Plaintiff a SNO for anything other than medical necessity. The evidence likewise shows that the specialist optometrist also issued Plaintiff a SNO for sunglasses after Graham discontinued the SNOs. Accordingly, there is evidence in this record from which a jury could conclude that Plaintiff had a serious medical need.

## 2. Deliberate Indifference

Here, Defendant Graham discontinued Plaintiff's SNOs on two occasions after the SNOs had been given to Plaintiff by providers who examined Plaintiff. Defendant Graham did not examine Plaintiff and did not attempt to examine Plaintiff. Defendant Graham argues that he discontinued the SNOs because Plaintiff did not have one of the medical conditions that would have allowed Plaintiff to have a SNO for sunglasses, but the medical conditions Graham lists are not mentioned anywhere in Corizon's policy and it is entirely unclear why those are the only medical conditions that would have qualified Plaintiff for sunglasses, especially without examination from the provider prior to discontinuation of the SNO. Further, Graham admits that he did not give eye exams at the prison, and thus it is not clear why he would have been making decisions relating to Plaintiff's eye conditions. Moreover, Graham's testimony that there are only certain conditions that would necessitate sunglasses in prison is directly contradicted by the fact that the optometrist who worked in the prison gave Plaintiff a SNO for sunglasses after examining Plaintiff's eyes, suggesting

---

[3] Plaintiff saw Defendant Graham on one occasion on March 21, 2016, for conditions unrelated to Plaintiff's eyes. (Doc. 75 at 11-17.) Indeed, Defendant Graham admits that he would not have examined Plaintiff's eyes because he was acting as a general medicine doctor and did not give eye exams. (Doc. 75 at 4 ¶ 15.)

that the specialist in the area of eyes was unaware that there was a requirement that Plaintiff needed to have certain pre-existing conditions in order to qualify for sunglasses. Moreover, Plaintiff provided testimony that when he did not have sunglasses for his photosensitivity, he experienced headache, dizziness, and vomiting.

Accordingly, there are disputed issues of material fact as to Graham's reasons for discontinuing Plaintiff's sunglasses without prior examination of Plaintiff, and despite the fact that Graham did not treat eyes and that medical providers who actually examined Plaintiff gave him SNOs for sunglasses before and after Graham had discontinued the SNO. As such, a reasonable jury could conclude that Graham was deliberately indifferent to Plaintiff's serious medical needs and the Motion for Summary Judgment will be denied as to Defendant Graham.

## B. Defendant Harris

Plaintiff asserts that Defendant Harris was deliberately indifferent to Plaintiff's serious medical needs when Harris confiscated Plaintiff's sunglasses. Defendant Harris argues that he is entitled to summary judgment because he did not deny Plaintiff access to medical treatment, but relied on Graham's discontinuation of Plaintiff's SNO when he confiscated and did not return Plaintiff's sunglasses. Harris asserts that because Plaintiff was not permitted to have sunglasses while in maximum custody without a SNO, he was required to confiscate the sunglasses pursuant to ADC policy. In response, Plaintiff asserts that Defendant Harris confiscated Plaintiff's sunglasses prior to Graham's discontinuation of Plaintiff's SNO.

There is no evidence that Harris confiscated Plaintiff's sunglasses prior to consulting with Graham as to whether Plaintiff had a valid SNO for sunglasses. Harris testifies that he did speak with Graham at some point to confirm that Plaintiff did not have a valid SNO for sunglasses, and Plaintiff has produced no evidence to dispute this statement. Even if Harris had confiscated the sunglasses until he could check to see if Plaintiff had a valid SNO, given the concerns about sunglasses in maximum custody, it would not have been unreasonable for Harris to confiscate the sunglasses for a short time

while he checked with medical to see if Plaintiff had a medical reason to possess the sunglasses. Defendant Harris is not a medical provider, did not have the skills necessary to examine Plaintiff's eyes, and did not have the authority to issue Plaintiff a SNO for sunglasses or overrule Graham's decision with regard to the SNO. Because Harris relied on Graham's revocation of Plaintiff's SNO, he was not deliberately indifferent to a serious risk to Plaintiff's health when he confiscated Plaintiff's sunglasses. *See Peralta v. Dillard*, 744 F.3d 1076, 1086-87 (9th Cir. 2014) (defendant not aware of risk of harm where he was not a dentist, he did not independently review medical chart before signing off on appeal and had no expertise to contribute to a review, and he relied on dental staff who investigated the plaintiff's complaints).

Accordingly, Defendant Harris's Motion for Summary Judgment will be granted and Harris will be dismissed from this action.

## C. Defendant Corizon

In its Motion for Summary Judgment, Defendant Corizon argues that there is no evidence that it promulgated or supported a custom or practice that deprived Plaintiff of his civil rights. (Doc.74 at 13.) In Response, Plaintiff asserts that Defendant Corizon's delivery of healthcare is systemically deficient and that Corizon failed to properly train Graham.

To prevail on a claim against Corizon, as a private entity serving a traditional public function, Plaintiff must meet the test articulated in *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 690-94 (1978). *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1139 (9th Cir. 2012) (applying *Monell* to private entities acting under color of state law). Corizon cannot be liable under a theory of respondeat superior for the alleged unconstitutional acts of its officers under 42 U.S.C. § 1983. *See Monell*, 436 U.S. at 691. Thus, Corizon may not be sued solely because an injury was inflicted by its employees or agents. *Long v. Cnty. of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006). To make this showing, Plaintiff must demonstrate that (1) he was deprived of a constitutional right; (2) Corizon had a policy or custom; (3) the policy or custom amounted to deliberate

indifference to Plaintiff's constitutional right; and (4) the policy or custom was the moving force behind the constitutional violation. *Mabe v. San Bernardino Cnty., Dep't of Pub. Soc. Servs.*, 237 F.3d 1101, 1110-11 (9th Cir. 2001). Further, if the policy or custom in question is an unwritten one, the plaintiff must show that it is so "persistent and widespread" that it constitutes a "permanent and well settled" practice. *Monell*, 436 U.S. at 691 (internal quotation and citation omitted). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).

The failure to provide proper training may represent a policy for which Corizon is responsible if the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers can reasonably be said to have been deliberately indifferent to the need. *City of Canton v. Harris*, 489 U.S. 378, 390 (1989). Here, there is no evidence to support that Graham was acting pursuant to a policy, custom, or practice of Defendant Corizon. Likewise, although Plaintiff argues that Graham was unqualified, he produces no evidence that the need for more or different training of Graham was so obvious that it was likely to result in a violation of Plaintiff's constitutional rights. Indeed, the evidence shows that the other medical providers employed by Corizon who examined Plaintiff's eyes were responsive, and ordered him SNOs. There is no evidence that Graham's actions in this action could amount to a policy of deliberate indifference to Plaintiff's constitutional rights.

Accordingly, the Motion for Summary Judgment will be granted as to Corizon, and it will be dismissed from this action.

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is **withdrawn** as to Defendant Nathaniel Harris's Motion for Summary Judgment (Doc. 72) and Defendants Corizon Health, Inc. and Stephen Graham's Motion for Summary Judgment (Doc. 74).

1   (2)   Defendant Harris's Motion for Summary Judgment (Doc. 72) is **granted**.
2   Defendant Harris and Count One are dismissed from this action.

3   (3)   Defendants Corizon and Graham's Motion for Summary Judgment (Doc. 74)
4   is **granted in part and denied in part** as follows:

5        a)   the motion is granted as to Defendant Corizon and Count Four.
6   Defendant Corizon and Count Four are dismissed from this action.

7        b)   the motion is denied as to Defendant Graham and Count Two.

8   (4)   The remaining claim in this action is Plaintiff's Eighth Amendment claim for
9   deliberate indifference to serious medical needs against Defendant Graham in Count Two.

10  (5)   This action is referred to Magistrate Judge Burns to conduct a settlement
11  conference.

12  (6)   Defense Counsel shall arrange for the relevant Parties to jointly call
13  Magistrate Judge Burns' chambers at (602) 322-7610 within 14 days to schedule a date for
14  the settlement conference.

15       Dated this 17th day of March, 2020.

_____
James A. Teilborg
Senior United States District Judge

- 10 -